BARNS, PAUL D., Associate Judge.
Appellant-plaintiff Young brought suit for specific performance of a contract relating to stock against the appellee-defend-ant Edwards. After the case was at issue the defendant moved for a summary decree. At hearing of this motion the lower court granted the motion and dismissed the action whereupon plaintiff Young prosecuted this appeal and assigned as error the entry of the order of dismissal. Error not having been made to appear, we affirm.
Statement of the Facts
In March, 1954 plaintiff was the owner of 1,750 shares out of a total of 2,500 authorized and issued shares of the Class B common stock of Permachem Corporation. The holders of Class B stock, voting together as a separate class, were entitled, to the exclusion of Class A common stockholders, to elect a majority of the members of the Board of Directors, and therefore plaintiff, as the owner of said stock, controlled the said corporation.
Plaintiff agreed to sell to the defendant Edwards the 1,750 shares of Class B common stock then owned by him. On or about April 13, 1954, pursuant to said agreement, plaintiff did sell defendant Edwards the said stock. This agreement of sale provided among other things that:
“13. In the event Edwards at any time within Five (5) years from date of closing decides to sell his Class B stock in Permachem, Young shall have the first refusal to buy such stock, paying therefor an amount equal to any bona fide offer to purchase which Edwards may have received, or in the absence of a bona fide offer, an amount equal to the going price of the market.”
Thereafter, on or about February 14, 1955 plaintiff and defendant Edwards entered into another written agreement *213 supplementing and clarifying the original agreement. That agreement among other things provided as follows:
“ * * * that the ‘date of closing’ referred to therein was the 13th day of April, A.D. 1954, and ‘his Class B stock in Permachem’ deferred to therein refers to 1,750 shares of Class B Common Stock of Permachem constituting 70% of all of the authorized, as well as issued and outstanding, shares of said Class B stock, that Young shall have thirty (30) days after notice from Edwards in writing of Edwards’ decision to sell his said Class B stock and of the amount of any bona fide offer or evidence of the going price on the market, within which to buy and pay for said stock pursuant to said first refusal, and that Cecil P. Young is entitled to enjoy the benefits of said paragraph 13 to and including the 13th day of April, A.D. 1959 * * *”.
On October 14, 1958 and while the above agreement was still in full force and effect, the defendant Edwards, entered into a written contract with the defendant Bibb, which among other things provided:
“1. * * * None of the unissued shares are subject to subscription right or option of any kind, nor are any of the A or B shares held by me encumbered in any way or subject to any option of any kind, except: a right of first refusal, expiring April 15th, [sic] 1959, contained in an agreement dated March 31st, 1954, a copy of which has been furnished to you by my attorney Andrew B. Young accompanying his letter dated October 10th, 1958, to your attorney, James B. Grant.
“2. You will have an option exercisable commencing June 1st, 1959, and continuing until April 15th, 1960, to purchase from me 1,000,000 shares of Class A stock of Permachem Corporation at a price of $1.00 a share, and thereafter 1,917 shares of Class B stock of Permachem Corporation at a price of $1.00 a share, payable against delivery of such stock; in consideration for such option you will pay to me $10,000.00 in cash on or before October 15th, 1959, provided, however, that if such option is exercised your payment of $10,000.00 shall be credited against the total purchase price. Such option shall be exercisable by you at any time, and from time to time, during the effective period of such option, provided, however, that at no time may you purchase less than 100,000 shares of such optioned stock except at the time of purchase of the last remaining stock subject to such option. * * *
“Your right to purchase any shares of the Class B stock of Permachem Corporation referred to above shall, as of the time of exercise of such right, be subject to all of the following conditions :
“(A) You must first exercise your option to purchase all of the 1,000,000 shares of Class A stock referred to above;
“(B) Gross revenues of Permachem Corporation shall have been maintained at a level of at least $50,000 a month for a period of three consecutive months commencing after June 1st, 1959;
“(C) You shall have complied fully and to my reasonable satisfaction with the other terms and conditions set forth in Articles 3 and 10 of this agreement.
sfc H* H*
“3. Upon execution of this agreement, you will undertake the active management of the corporation and the conduct of its entire business. In addition to assuming full management *214 responsibilities, you will undertake the following:
“a. During the period of this option agreement, you will conduct research, and make investigations and tests of the Corporation’s products and proposed products in the field of present and projected use and particularly in the field of medical and hospital use.
“b. You will conduct research and study of the Corporation’s patent and engineering fields, including records of litigation, interference proceedings and related legal matters and including all communications of the Corporation with any Governmental agency relative to the Corporation’s products and other activities. In connection with such study and research, you will cause the appropriate members of your group to sign trade secrecy agreements with the Corporation in the form annexed hereto as Exhibit ‘A’ prior to the disclosure of any confidential material to you, as reasonably necessary for the protection of the Corporation.
“c. During the period of this option Agreement, you will also conduct study and research in connection with the Corporation’s sales, promotion and advertising, production, and financial methods and policies.
“4. In consideration of your management of the Corporation you and others designated by you shall have the right to compensation for such services out of the proceeds of any increased gross sales or other additional income of the Corporation occurring after the date of execution of this agreement, subject to approval of the Board * *
At no time prior to the institution of suit did defendant Edwards give to plaintiff notice, either orally or in writing, of the defendant Edwards’ decision to sell his said 1,750 shares of Class B stock or of the amount of any bona fide offer or evidence of the going price on the market, nor did defendant Edwards ever give to plaintiff thirty days within which to buy and pay for the said 1,750 shares of Class B stock pursuant to plaintiff’s right.
Plaintiff’s complaint, among other things,, states that the plaintiff thereby elects to-exercise his right of first refusal of said' agreement with A. 0. Edwards and offers- and agrees to purchase the said 1,750 shares-of Class “B” stock of Permachem Corporation from A. O. Edwards under the same-terms, conditions and consideration that, the A. O. Edwards offered and agreed to-sell to D. Porter Bibb, Jr., under this agreement dated October 14, 1958; that plaintiff’ is ready, willing and able to purchase the said Class “B” stock of Permachem Corporation under the terms, conditions and consideration that the said A. O. Edwards-offered to D. Porter Bibb, Jr., under agreement dated October 14, 1958.
The defendants answered, asserting that the action of the defendant Edwards in giving option to the defendant Bibb to buy the Class B stock is not such a decision to sell the defendant A. O. Edwards’ Class B stock as to give the plaintiff herein the first refusal to buy such stock.
Conclusion
Plaintiff’s right to first refusal was contingent upon the Defendant’s decision to sell within five years ending April 13, 1959. The sales price, in event of a sale, was not fixed definitely by the option and, of course, a sales price would be a major factor as to whether Edwards would make a decision to sell as well as any decision of Young to buy. According to the terms of paragraph 13 first above quoted, Young’s right of first refusal would become activated either upon Edwards giving Young notice of a decision to sell because of having received an acceptable “bona fide offer to purchase”, or notice of a decision to sell “at 'the .going price on the market”.
*215 The facts fail to reveal that Edwards has ■ever received an offer for the stock acceptable to him. Subject to Young’s right of first refusal, Edwards has offered to sell the stock to Bibb at a time after the expiration of Young’s rights, but this offer or ■option has not been accepted or exercised by Bibb; and Bibb’s option to buy was ■conditional and contingent and not absolute. Edwards’ contract with Bibb seems to be a restriction upon Edwards’ right to accept ■any bona fide offer, all of which would naturally operate against Edwards making a decision to sell in violation of his contract with Bibb and this he could rightfully do, in the absence of fraud.
Another provision of the contract provided that Young’s right of first refusal anight be activated by Edwards giving Young notice of an offer at the “going price on the market”. Evidently the going market price was not sufficiently high to induce Edwards to make an offer of sale at the market price within the five year period.
Young by his complaint states that he elects to purchase said 1,750 shares of Class ■“B” stock under the same terms, conditions and consideration that Edwards offered it to Bibb. Young had no equities in the contract with Bibb. The contract with Bibb ■covered stock other than the 1,750 shares of Class “B” stock and required services from Bibb that were peculiarly personal. Young could not meet all the terms of the Bibb contract and the court will not rewrite the Bibb contract by substituting Young in the place of Bibb so as to enable Young to acquire the 1,750 shares. Of course, if Edwards had made an unconditional offer to Bibb to sell the 1,750 shares of Class “B” stock at a fixed price, doubtless Young’s rights of first refusal would have been activated as coming within the intent of the parties although not within the letter of the contract.
Affirmed.
ALLEN, C. J., and SHANNON, J., concur.